# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRANDON WARE,<br><br>           Defendant. | Crim. Action No. 1:22CR105 |

## MEMORANDUM IN AID OF SENTENCING

Brandon Ware, through undersigned counsel, respectfully requests that the Court impose no more than 60 months of incarceration, followed by five years of supervised release, when sentencing him for his offense of receipt of child pornography. As explained further below, the suggested sentence is sufficient but no greater than necessary to achieve the goals of sentencing for the following reasons:

- Mr. Ware has accepted responsibility for his conduct and has expressed remorse for the harm he has caused;

- Mr. Ware's instant offense and his limited prior record reflect his long struggle with a substance abuse disorder;

- Mr. Ware has never received extensive substance use or mental health treatment, and welcomes the opportunity to engage with any treatment recommended to reinforce his commitment to not reoffending;

- According to the attached psychological evaluation, Mr. Ware presents as "low-risk" for recidivism;

- A longer sentence would create unwarranted disparity, considering both national and local trends in cases – like this one – that do not involve distribution, production, or other more aggravated child pornography conduct;

- 60 months in prison, supervised release, and the requirements for sex offender registration will, together, reflect the various serious nature of the offense and provide ample punishment and deterrence.

**I.    The Court must impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing.**

It is now "emphatically clear" that the "Guidelines are guidelines – that is, they are truly advisory." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008). As the Department of Justice recently noted, the guidelines range is no substitute for an independent determination of a sentence that is "appropriate [and] serve[s] the interests of justice." *See* Gov't Supp. & Amend. Sent. Mem., *United States v. Stone*, Case No. 19-cr-18-ABJ, Dkt. No. No. 286 (D.D.C. Feb. 11, 2020) (requesting a sentence "far less" than the "technically applicable" Guideline range, which can result in advisory sentencing ranges that are "unduly high," "excessive and unwarranted under the circumstances," and insufficiently reflective of the other § 3553(a) factors); *see also Nelson v. United States*, 555 U.S. 350 (2009), *Spears v. United States*, 555 U.S. 261 (2009), *Kimbrough v. United States*, 552 U.S. 85 (2007), *Gall v. United States*, 552 U.S. 38 (2007), *Rita v. United States*, 551 U.S. 338, 351 (2007).

**II.    The Court may depart from guidelines if it finds that the guidelines do not reflect the mandate of 18 U.S.C.§ 3553 (a).**

The Supreme Court has held that sentencing courts may vary from the guidelines based on policy disagreements alone. *Kimbrough*, 552 U.S. at 101-02 (courts may vary from guidelines ranges based solely on disagreements with the guidelines); *Rita*, 551 U.S. at 351 (district courts may find that the "guidelines sentence itself fails properly to reflect § 3553(a) considerations").

As discussed below, because the child pornography guidelines are not based on empirical data and national experience, the Court may find that the guidelines fail to "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough*, 552 U.S. at 89. Indeed, numerous courts have approved policy-based variances from § 2G2.2. *See United States v. Henderson*, 649 F.3d 955, 960 (9th Cir. 2011) ("[T]he child pornography guidelines were not developed in a manner 'exemplify[ing] the [Sentencing] Commission's exercise of its characteristic institutional role,' . . . so district judges must enjoy the same liberty to depart from them based on reasonable policy disagreement as they do from the crack-cocaine guidelines discussed in *Kimbrough*."), *United States v. Grober*, 624 F.3d 592, 600-01 (3d Cir. 2010) (finding district court did not abuse discretion by imposing a policy-based downward variance from § 2G2.2 because "the Commission did not do what 'an exercise of its characteristic institutional role' required to develop § 2G2.2 based on research and study rather than reacting to changes adopted or directed by Congress"), *United States v. Stone*, 575 F.3d 83, 97 (1st Cir. 2009) (noting district court may choose to agree with Congress's policy decisions as long as it recognizes its authority not to, but the child pornography "guidelines at issue are in our judgment

harsher than necessary" and "we would have used our *Kimbrough* power to impose a somewhat lower sentence"); *see also United States v. Halliday*, 672 F.3d 462, 474 (7th Cir. 2012) (district courts are "at liberty to reject any Guideline on policy grounds," but defendant did "not argue that the district court was unaware of its discretion to disagree with the [child pornography] guidelines"), *United States v. Regan*, 627 F.3d 1348, 1353-54 (10th Cir. 2010) (finding defendant's argument for a policy-based variance from § 2G2.2 was "quite forceful," but not an abuse of discretion because defendant did not raise issue before district court).

Ultimately, of course, the central mandate of § 3553(a) requires district courts to impose a sentence "*sufficient, but not greater than necessary*" to comply with the purposes of sentencing set forth in § 3553(a)(2). This requirement is not just another factor for the Court to consider along with the others set forth in § 3553(a). Rather, it sets an independent limit upon the sentence.

## III.   A 60-month sentence is sufficient given the history and characteristics of Mr. Ware, and the circumstances of the offense.

Brandon Ware was born in 1986 in Sacramento, California. Though his childhood could be described as typical, he experienced significant stressors as a child for which he never received professional help. First, his family moved around a lot due to his father's job as a correctional officer. A shy, awkward boy, each time he had to relocate and switch schools distressed Brandon. Second, his formative years were marred by his mother's addiction to prescription pills. While she was suffering through her addiction, her behavior was erratic and, at times, out of control. Finally, Brandon had a rocky relationship with his father. Though Brandon did not

characterize it as abuse in the PSR, as Brandon's sister Natasha explained it, Brandon's father often singled Brandon out for punishment, which consisted of emotional and physical abuse.

As a teenager, Brandon became depressed but lacked the emotional and financial resources to seek help for the issues he was having at home. At 16 years old, he picked up a drinking habit, which continued to plague him into adulthood and developed into excessive drinking, leading to his three prior alcohol-related offenses.

After graduating from high school, Brandon worked as a masseuse until he picked up, moved to Washington, D.C., and began working in restaurants and bars. New to D.C., Brandon found it was easiest to make friends at the bars where he worked. As one might expect, working around alcohol accelerated Brandon's already excessive drinking. When the pandemic hit and health officials advised that people stay inside and maintain a safe distance from others, Brandon's drinking became even worse. Brandon's increased alcohol use was not uncommon—studies have showed that depression and alcohol abuse increased nationwide during the height of the pandemic due to people feeling isolated and alone.[1] As explained in the attached

---

[1] See e.g. The Associated Press, *The Rate of Alcohol-Related Deaths in the U.S. Rose 30% in the First Year of COVID*, Nat'l Pub. Radio, (November 5, 2022, 10:43AM), https://www.npr.org/2022/11/05/1134523220/alcohol-death-rate-cdc-report

psychological evaluation, his excessive drinking had a disinhibiting effect and exacerbated his compulsive use of pornography, including child pornography.[2]

Mr. Ware has never received consistent substance use or mental health treatment. While he completed court-mandated alcohol treatment after being convicted of his second DUI, the treatment consistent of once per week meetings, which did not meet the severity of Mr. Ware's substance abuse disorder or address his mental health needs. According to the examiner who interviewed Mr. Ware, Mr. Ware could benefit from additional treatment and substance abuse treatment.[3]

Critically, Mr. Ware is open to such treatment. Indeed, he is eager to understand what got in the way of his better judgment, as he does recognize that his conduct contributes to the ongoing pain for the victims of child abuse depicted in child pornography. Letter of Brandon Ware[4] ("I know that my actions contribute to an industry that makes money off the pain and suffering of real little children.").

## IV.   The nature of the offense does not make it necessary to impose more than 60 months of incarceration.

The nature of the offense is straightforward: Mr. Ware obtained images and videos of child pornography from the internet and saved it to computer devices. Undoubtedly, child pornography is reprehensible, and possession of it is wrong. Indeed, Mr. Ware has made no excuses for his behavior and has accepted

---

[2] Erickson Report at 9 (filed under seal).

[3] Erickson Report at 10 ("With suitable treatment, Mr. Ware's impulsivity and hypersexuality should be reduced and his risk of sexual recidivism will further decline.").

[4] Mr. Ware's letter is filed under seal as Exhibit 2.

responsibility for his offenses by pleading guilty to receipt of child pornography and by expressing remorse for his conduct.

Despite the type and significant number of images and videos he possessed, this case lacks aggravating factors that suggest a deeper commitment to child pornography. For example, there is no evidence that Mr. Ware distributed child pornography or used peer-to-peer networks. Nor is there evidence that he engaged in any chats with others about child pornography, visited chat rooms related to child pornography, or evidence demonstrating obsessive categorization or organization of the contraband files he possessed. Finally, there is no evidence that he ever used the internet to attempt to meet or solicit minors in any way.

## V.     The child pornography guidelines are an imperfect proxy for culpability.

Undersigned counsel has reviewed the presentence report with Mr. Ware, and consistent with his plea agreement, he raises no objection to the calculation of the applicable guideline range of 108 to 135 months of incarceration.

However, in this case, the guidelines fail to recommend an appropriate punishment. In recent years, a consensus has been growing within the judicial and legal communities that the child pornography guideline, U.S.S.G. § 2G2.2, is significantly flawed. Like the crack-cocaine guideline, the child pornography guideline is based on neither careful nor empirical study by the Sentencing Commission, but rather on Congressional mandates.[5]

---

[5] *See generally* Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (January 1, 2009) (hereinafter "Stabenow Report"). This report is available at

As detailed in greater length in the Stabenow Report, the most significant and draconian changes to the guideline occurred because of the PROTECT Act of 2003.[6] That legislation directly mandated certain new enhancements, such as an enhancement of up to 5 levels based on the number of images involved. In addition, in order to keep pace with the newly enacted five-year mandatory minimum in receipt and distribution cases, the base offense level for those offenses increased 5 levels from 17 to 22.[7]

Rather than reflect enhancements that distinguish among defendants and levels of conduct, the guideline now includes enhancements such as "use of a computer," "material involving a child under the age of 12 years," and "number of images" that apply in virtually all cases.[8] For this very reason, the Second Circuit reversed a within-guidelines sentence imposed in a child pornography case based upon the "irrationality" of the guideline. *See United States v. Dorvee*, 616 F.3d 174, 187 (2d Cir. 2010). The court further cautioned sentencing courts in child pornography cases to "bear[] in mind that they are dealing with an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." *Id.* at 188.

---

http://www.fd.org/pdf_lib/child%20porn%20july%20revision.pdf (last visited August 11, 2022).

[6] *Id.* at 19-26.

[7] *Id. See also United States v. Hanson*, 561 F. Supp.2d 1004, 1010 (E.D. Wis. 2008) (describing changes to U.S.S.G. § 2G2.2 effected by the Protect Act).

[8] *See id.*

Furthermore, the Sentencing Commission itself has recognized that enhancements, which were meant to increase penalties for egregious cases, now apply in virtually every case. In 2012, a Commission report analyzed sentences imposed in non-production offenses, such as the receipt and distribution of child pornography offense.[9] Based on its findings, the Commission concluded that the non-production child pornography sentencing scheme should be revised to account for technological changes. However, no changes to the guideline followed the Commission's report. In 2021, the Commission issued another report focusing on non-production offenses resolved in fiscal year 2019.[10] That report made the following key findings, which were consistent with the 2012 report's findings:

- Non-production child pornography offenses increasingly involve voluminous quantities of videos and images that are graphic in nature, often involving the youngest of victims.

- USSG 2G2.2 contains a series of enhancements that have not kept pace with technological advancements. Four of the six enhancements—accounting for a combined 13 levels—cover conduct that has become so ubiquitous that they may now apply in the vast majority of cases sentenced under 2G2.2.

- For example, the enhancement for images depicting sadistic or masochistic abuse of an infant or toddler was applied in 84% of cases

---

[9] *See* U.S. Sent'g Comm'n, Rep. to Congress: Child Pornography Offenses at 123 (December 2012) ("U.S.S.C. 2012 Report"). Available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressi onal_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornogra phy_Offenses/Full_Report_to_Congress.pdf (last visited Nov. 2022).

[10] See Federal Sentencing of Child Pornography: Non-Production Offenses (June 2021) ("U.S.S.C. Report 2021"). Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf.

and the enhancement for having 600 or images applied in 77.2% of all cases.
.

Thus, the Commission found that sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders. The Commission went on to conclude that because enhancements initially designed to target more serious and culpable offenders apply in most cases, the average guideline minimum has increased since 2005.[11] Finally, the Commission found that "courts increasingly apply downward variances in response to the high guideline ranges that apply to the typical non-production child pornographer offender."[12]

i.   **Mr. Ware's case reflects the concerns raised by the Stabenow and Commission Reports**.

Mr. Ware's case is emblematic of concerns raised in the Stabenow and Commission's Reports. Specifically, his guideline range is increased by 4 levels for use of a computer and for the age of victim. These two enhancements applied in *95 percent* of non-production cases in fiscal year 2019.[13] Likewise, he receives an additional 5-level enhancement of more than 600 images, which, as the Commission found, is increasingly common due to the advancements in technology. Indeed, in fiscal year 2019, non-production child-pornography offenses involved a median

---

[11] *Id.* at 5.

[12] *Id.*

[13] *Id.* at 4.

number of 4,265 images.[14] Mr. Ware received another 4-level increase for having images of an infant/ toddler under § 2G2.2(b)(4), but the Commission found that this enhancement applied in the 84% of non-production cases.[15] Thus, these enhancements, originally intended to apply to cases with aggravating factors now apply to the vast majority of non-production cases, including Mr. Ware's. For these reasons, in this case, the Court should give little weight to the applicable guideline range, and greater weight to the other factors under 18 U.S.S.G. § 3553 in this case.

## VI.   A 60-month sentence will avoid unwarranted disparity.

Consistent with the general recognition that the child pornography guidelines do a poor job of assessing culpability, since the PROTECT Act of 2003 and *United States v. Booker*, 543 U.S. 220 (2005), "there has been a steadily decreasing rate of sentences imposed within the applicable guidelines ranges in non-production cases."[16] A review of the sentencing data in Commission's 2021 report strongly supports that a sentence anywhere near the guidelines range in this case would lead to a substantial and unwarranted disparity compared to similarly situated offenders.[17] Indeed, the report found that for those who, like Mr. Ware, did not produce pornography and did not actively participate in a child pornography

---

[14] *Id.*

[15] *Id.*

[16] U.S.S.C. 2012 Report at ii.

[17] U.S.S.C. 2021 Report

community the average and median sentence length was 71 and 63 months, respectively.[18]

Reflecting this nationwide trend, sentences of anywhere from probation (where the government elects to charge possession of child pornography for the same conduct at issue here) to the minimum allowed 60 months of incarceration for receipt of child pornography are not uncommon in this district or from this Court. Although no two cases are exactly alike, similar cases are highlighted below.

1. *United States v. Malakoff*, 1:09-cr-051 (ESH) (D.D.C. 2009): Defendant (an employee of National Public Radio) was sentenced to 5 years' probation after pleading guilty to possessing 150 images of child pornography, some of which displayed sexual violence against children.

2. *Unites States v. Abreu*, 1:15CR1 (ABJ): Defendant was sentenced to 36 months incarceration followed by 72 months of supervised release after having been found in possession of over 10,000 images or videos depicting child pornography including 28 images and 6 videos depicting infant or toddler sexual abuse; and approximately 18 images and 23 videos depicting sado-masochistic acts or violence to a child. Defendant admitted he obtained child pornography through email shares, accessing file-sharing websites, and by downloading from particular websites.

3. *United States v. Magee*, 12-CR-269 (ABJ): Defendant was sentenced to 46 months incarceration followed by 120 months of supervised release after

---

[18] Id. at 44.

having been captured on a chat line admitting to a UC that "I have pics of the 16yp," and "the videos are 12 and under and they swallow loads few of them get fucked raw." Later, the defendant sent the UC two videos of child pornography, including one showing an infant being penetrated by an adult male. After distributing two videos, the defendant continued to chat about child pornography.

4. *United States v. Payne*, 11CR317 *(*ABJ): Defendant was sentenced to 60 months incarceration, 120 months of supervised release for having made plans to meet a child for sex. He was arrested at the location of the meet-up. A search of defendant's computer revealed 300-600 images and videos of prepubescent children having sex with adults.

5. *United States v. Meekins*, *17CR103 (*ABJ): defendant sentenced to 24 months followed by 48 months of supervised release after 66 videos including several of naked prepubescent female children bound having sex with adult males.

6. *United States v. Christopher Solorzano*, 1:19-cr-00282 (TJK) Judge Kelly sentenced the defendant to 60 months' imprisonment, followed by 60 months of supervised release. Mr. Solorzano sent an agent several images of child pornography, as well as nude pictures of his minor stepdaughter with whom he claimed to have engaged in sexual activity. Mr. Solorzano also discussed traveling to Washington, D.C. to engage in sex acts with the agent's purported 8- year-old child.

7. *United States v. Jason Gordon*, 1:17-cr-00026 (TFH), Judge Hogan imposed a sentence of 60 months' imprisonment, to be followed by 10 years of supervised release, for distribution of child pornography. In that case, the defendant arranged to meet an undercover agent and his purported 9-year-old daughter for purposes of the defendant having sex with the agent's daughter. The defendant also sent multiple videos to the agent depicting prepubescent girls engaged in sex acts with adult men.

8. *United States v. Bayo Bakare*, 1:16-cr-00129 (TSC) Judge Chutkan imposed a sentence of 60 months' imprisonment, to be followed by 120 months of supervised release, for distribution of child pornography. In that case, the defendant arranged to meet an undercover agent and his purported daughter for purposes of the defendant having sex with the agent's daughter. The defendant also sent multiple videos depicting prepubescent and teenage girls being sexually abused to the agent.

9. *United States v. Freer*, 1:19CR 75 (LOG) (E.D. Va. 2019): Defendant was charged with receipt of child pornography and sentenced to the 60 year mandatory minimum sentence because the defendant was found in possession of over 200 images or videos of child pornography including images of children 11 to 13 years of age.

10. *United States v. Visconi*, 19CR258 (TSE) (E.D.Va. 2019) Defendant pled guilty to receipt of child pornography and was sentenced to the 60 year mandatory minimum. The guidelines range was 97 to 121 months.

Defendant possessed images of penetration of pre-pubescent children, including a five-year-old.

These cases are just a few examples that illustrate that the defense's request in this case is in keeping with local and national trends and will avoid unwarranted disparity. [19]

## VII.   A 60-month prison sentence, coupled with other punishment, will reflect the seriousness of the offense, promote respect for the law, provide ample punishment, and promote deterrence.

Mr. Ware does not dispute the serious nature of his offense. He is "appalled" by his conducted and ashamed.[20] Five years is a long time in prison, particularly for someone like Mr. Ware, who has never before been incarcerated for an extended period. When considering Mr. Ware's punishment, counsel respectfully asks this Court to also consider that Mr. Ware has spent his pre-trial detention under harsher

---

[19] The government's reliance on the JSIN to in support of its argument that a within-guidelines sentence would avoid disparity is misplaced. The JSIN reports that between 2017 and 2021, there were 98 offenders whose primary guideline was U.S.S.G. § 2G2.2, with a Final Offense Level of 30 and a Criminal History Category of II. For the 97 offenders who received a sentence of imprisonment, the average length imposed was 104 months and the median length was 112 months. That data does not include offenders who received a §5K1.1 substantial assistance departure. Reliance on the total offense level fails to address the severity of the offense, which could be more or less severe. As set forth *supra*, the Sentencing Commission notes in its non-production child pornography report that "across all non-production child pornography offense types, §2G2.2 fails to distinguish adequately between more and less severe offenders." U.S.S.C 2021 Rep. at 19. The Commission found that charging practices, in part, contributed to the severity of the sentence. Therefore, the JSIN, which relies on total offense level, does not account for similarly situated defendants whose outcomes differ in part because of charging decisions. Therefore, the JSIN does not assist the court in avoiding "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

[20] Letter of Brandon Ware

than usual conditions due to COVID restrictions still present in jails and prisons. As the District and surrounding areas slowly emerged from two years of pandemic restrictions, the area's jails and prisons continued to grapple with the spread of COVID in congregate settings, even among vaccinated inmates. Mr. Ware has spent his pre-trial detention at first the D.C. Jail, next at Lewisburg USP, and finally at the Alexandria Detention Center, jails that are across the country from his family. During his pre-trial detention, his unit at these jails has "quarantine" countless times. When the unit was on "lockdown," Mr. Ware was locked in a cell 23 hours per day—essentially solitary confinement though he did nothing to warrant such a draconian method of confinement. Unsurprisingly, research shows that people who experience solitary confinement are more likely to develop anxiety, depression, and suicidal thoughts.[21] Courts have recognized that punishing conditions of pre-trial confinement can independently serve as a basis for a downward variance. *See United States v. Jayyousi*, 657 F.3d 1085, 1118 (11th Cir. 2011) (a court "may reduce a sentence to account for the harsh conditions of pretrial confinement"), *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001), *Bains v. United States*, 2009 U.S. Dist. LEXIS 2018, at *8 (D.N.J. Jan. 12, 2009) (poor conditions of pretrial condition "properly treated as grounds for a variance"). Indeed, Mr. Ware's pre-trial detention alone is a sufficient basis for a variance.

---

[21] *See e.g.* Haney, Craig, *The Psychological Effects of Solitary Confinement: A Systemic Critique*, The University of Chicago Press Journals, Vol. 47 (2018).

Five years in prison, the last ten months of which were served under uniquely harsh conditions, followed by years of restricted liberty, monitoring on supervised release through the Sex Offender Registration Act, monetary debts, and a lifetime of limitations on housing, work, and community that naturally flow from such convictions, are ample and serious punishment, and will promote respect for the law.

Moreover, a five-year period of incarceration will certainly protect the public and provide specific and general deterrence. Prior to this case, Mr. Ware spent only a few days in jail for his DUI offenses. Thus any sentence of imprisonment will certainly provide ample deterrence to future criminal conduct.

Furthermore, Mr. Ware will continue to be strictly monitored after his release from incarceration, while on supervised release. During that time, he will be required to report to a probation officer and attend treatment. His behavior and progress in treatment will be closely followed. He will also have an ongoing requirement to register as a sex offender, and he will be required to inform the government of changes in his employment or residence. This Court retains the ability to impose further conditions later, should that prove necessary, and as such, the Court retains a great degree of control over Mr. Ware upon his release from incarceration.[22]

---

[22] The U.S. Sentencing Commission's most recent study on recidivism among those charged with non-production child pornography offenses showed the rate of sexual re-offending within three years of release was a mere 4.3%. *See Federal Sentencing of Child Pornography Non-Production Offenses*, *supra* at 65. Regardless of whether that low number reflects these various measures employed to ensure against reoffending, it is consistent with the conclusion that no more than sixty months of prison time is necessary in this case.

The need to ensure that any restitution orders are satisfied to the greatest extent possible also weighs in favor of not imposing more than 60 months of incarceration. Although finding work is always a particular challenge for individuals with convictions related to child pornography, as the attached letters demonstrate, Mr. Ware is fortunate have family support. The sooner Mr. Ware is out and able to find work, the sooner he can begin making restitution payments.

## CONCLUSION

For the foregoing reasons, and such others as may be presented at the sentencing hearing, Mr. Ware respectfully requests that the Court impose no more than 60 months of incarceration, and no more than $100 in special assessments, and that the Court recommend that the Bureau of Prisons house Mr. Ware in a facility that offers the Residential Drug Abuse Program. Finally, Mr. Ware agrees with the PSR's assessment that he is not in a position to pay a fine.

Respectfully submitted,

A. J. Kramer
Federal Public Defender

_____/s/_____
Elizabeth Mullin
Assistant Federal Public Defender
625 Indiana Ave NW, Suite 550
Washington, D.C. 20004
(202) 208-7500